## ESPINO v. WIXON.
### No. 10330.

Circuit Court of Appeals, Ninth Circuit.

May 27, 1943.

Andersen & Resner and Herbert Resner, all of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., and Louis R. Mercado and A. J. Zirpoli, Asst. U. S. Attys., all of San Francisco, Cal., for appellee.

Before WILBUR, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Juan Espino, a petitioner for the writ of habeas corpus in the District Court of the United States for the Northern District of California, Southern Division, appeals from an order of that court which denied the issuance of the writ and discharged the court's order to show cause why he was restrained of his liberty by the United States Immigration Authorities.

Appellant was arrested in the United States and within the territorial jurisdiction of the court above named, and, after hearing before the Immigration Authorities, he was ordered deported to the Republic of Mexico in accordance with the following laws: "The immigration act of 1924, in that at the time of his entry he was not in possession of an unexpired immigration visa; and the act of 1917, in that he has been convicted of having committed a felony or other crime or misdemeanor involving moral turpitude prior to entry into the United States, to wit: Rape; and that at the time of entry he was a member of a class excluded by law, to wit: Section 1(a) of the act approved March 4, 1929 [8 U.S.C.A. § 180], as amended, being an alien who had been arrested and deported in pursuance of law, and who had not received permission to apply for admission."[1] Since the issuance of the order of deportation, appellant has been, and is now, under restraint by such officials.

In a hearing before an Immigration Inspector, such as is usually held in immigration cases, appellant claimed and testified that he is a native born citizen of the United States, having been born in Santa Rosa, New Mexico, April 27, 1902, that his mother, dead since 1913, told him so, and that his earliest recollection is of going to school at that town. No birth records were kept in Santa Rosa, New Mexico, at this time. He testified that he registered for the military draft in Arizona in 1917, and it appears that he exhibited his draft card at the hearing, but the card contains no information as to his birthplace. However, his testimony at the hearing indicates that he gave Mexico as his birthplace at the time he registered.

[1] Warrant—Deportation of Alien, No. 12020/21794-WB, 55825/905, dated June 16, 1942, received by Warrant Division June 20, 1942.

It appears that he has worked in the United States for many years, and that his Social Security card indicates that he was born in the United States.

In his testimony he recalls that he crossed the border into Mexico at an early age. The evidence is not clear, but it seems that he crossed and recrossed the border at least once between his first crossing and his last return to the United States. Upon that occasion he stated to the authorities that he was a native of Mexico. He testified at the hearing that this statement was false and that he only made it in order to obtain re-entry.

While in San Quentin prison as a prisoner under sentence for a felony, he stated that he was born at Nazas, Durango, Mexico. Thereafter, he was deported to Mexico. He explains his statement that he was born in Mexico as a falsehood and as being prompted by his desire to get out of prison.

While the judge of the court reviewed the evidence taken at the deportation proceedings before the immigration officials, trial on the writ was never had. If the testimony received in the deportation proceedings is substantial and would, if believed, support a finding that appellant is a native born citizen of the United States, it was error for the trial court to make the order appealed from.

█ That a judicial trial of the issue of citizenship is necessary seems clear from the facts and the authorities. The act of deportation of a person from this country is authorized and enforced through an executive proceeding. Appellant, like the applicants for a writ of habeas corpus in the case of Ng Fung Ho v. White, 259 U.S. 276, 282, 42 S.Ct. 492, 494, 66 L. Ed. 938, did not merely assert his citizenship of the United States and was not in the position of a person stopped at the border when seeking to enter this country. He was already in the United States and had resided therein for years, and he supported his claim to citizenship "by evidence sufficient, if believed, to entitle him to a finding of citizenship." In the cited case the following question is posed: "Does the claim of citizenship by a resident, so supported both before the immigration officer and upon petition for a writ of habeas corpus, entitle him to a judicial trial of this claim?" The court suggests other points not necessary at this time to be noted and says (page 284 of 259 U.S.,

page 495 of 42 S.Ct., 66 L.Ed. 938) : "Jurisdiction in the executive to order deportation exists only if the person arrested is an alien. The claim of citizenship is thus a denial of an essential jurisdictional fact. * * * If the jurisdiction of the Department of Labor [then in charge of immigration proceedings] may not be tested in the courts by means of the writ of habeas corpus, when the prisoner claims citizenship and makes a showing that his claim is not frivolous, then obviously deportation of a resident may follow upon a purely executive order, whatever his race or place of birth; for where there is jurisdiction, a finding of fact by the executive department is conclusive, United States v. Ju Toy, 198 U.S. 253, 25 S.Ct. 644, 49 L.Ed. 1040; and courts have no power to interfere unless there was either denial of a fair hearing, Chin Yow v. United States, 208 U.S. 8, 28 S.Ct. 201, 52 L.Ed. 369, or the finding was not supported by evidence, American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90. * * * To deport one who so claims to be a citizen obviously deprives him of liberty, as was pointed out in Chin Yow v. United States, 208 U.S. 8, 13, 28 S.Ct. 201, 52 L.Ed. 369. * * * Against the danger of such deprivation without the sanction afforded by judicial proceedings, the Fifth Amendment affords protection in its guarantee of due process of law. The difference in security of judicial over administrative action has been adverted to by this court. Compare United States v. Woo Jan, 245 U.S. 552, 556, 38 S.Ct. 207, 62 L.Ed. 466; White v. Chin Fong, 253 U.S. 90, 93, 40 S.Ct. 449, 64 L.Ed. 797."

We suggest comparison, too, of Chin Hoy v. United States, 6 Cir., 293 F. 750, and of United States v. Wong Gong, 9 Cir., 70 F.2d 107. In the latter case this court held against the position taken by the government in that case that the unsupported testimony of a Chinese under deportation orders, given before a District Judge in a habeas corpus proceeding, to the effect that he was born in the United States is not evidence upon the issue of citizenship.

The Commissioner contends through the district attorney that a review of the proceedings will show that petitioner's claim to United States citizenship is not based upon substantial evidence and cites Bilokumsky v. Tod, 263 U.S. 149, 153, 44 S. Ct. 54, 68 L.Ed. 221, and Kessler v. Streck-

er, 307 U.S. 22, 34, 35, 59 S.Ct. 694, 83 L.Ed. 1082, as supporting his position. We do not agree, and we see nothing in the cited cases to support such view.

In our opinion the petitioner's claim of United States citizenship together with his testimony upon that issue before the Immigration Authorities requires a judicial hearing. The order of the District Court is reversed, and the cause is remanded with directions to proceed in conformity with this opinion.

Reversed and remanded.

